**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **LOGIC GROWTH, LLC,** | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Case No. SAG-20-2889 |
| | * | |
| **GARY W. DAY,** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Logic Growth, LLC ("Logic Growth") filed an Amended Complaint against Defendant Gary W. Day ("Day"), alleging breach of contract and fraud. Day moved to dismiss the Amended Complaint, ECF 16. Logic Growth filed an opposition, ECF 17, and Day filed a reply, ECF 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Day's motion to dismiss will be denied.

**I.    FACTUAL BACKGROUND**

These facts are derived from Logic Growth's Amended Complaint and are taken as true for purposes of adjudicating the motion to dismiss. Logic Growth is a limited liability consisting of two members who reside in Maryland: John Jeffrey May ("May") and his wife. ECF 13 ¶ 1. Beginning in or around 2013, Kevin Merrill ("Merrill") started a Ponzi scheme and eventually defrauded his investors out of approximately $396 million. *Id.* ¶ 6. Merrill and his co-conspirators operated several businesses in furtherance of their scheme, including Global Credit Recovery, LLC ("Global"). *Id.* ¶ 7. Through those businesses, Merrill falsely represented that he was using investors' money to purchase consumer debt portfolios and was making money for investors by collecting the underlying debts or re-selling the portfolios for profit. *Id.* In September 2018, the

Ponzi scheme collapsed.  *Id.* ¶ 8.  Merrill and two co-conspirators were convicted of federal offenses and sentenced to terms of imprisonment.  *Id.*

Day and Merrill were close personal friends.  *Id.* ¶ 10.  Day, and several entities he controlled, invested in Merrill's Ponzi scheme.  *Id.* ¶ 9.  Day also solicited investors for Merrill and processed some of the investments through his entities.  *Id.*  From October 30, 2014 through December 6, 2015, Day persuaded May to invest money in Merrill's company, Global.  *Id.* ¶ 10.  During the course of the investments, May and his spouse formed Logic Growth, because their marital assets were used to purchase the investments.  *Id.* ¶ 11.  May and Logic Growth's initial investments in Global were profitable.  *Id.* ¶ 12.  Day and May formed a new company, Credit Portfolio Lending II LLC ("CPLII") to market investments in Global to other individuals.  *Id.*  Day created marketing materials for CPLII to provide to prospective investors.  *Id.* ¶¶ 13, 16.  CPLII itself invested approximately $3 million in Global and funded the investment through a loan from Eagle Bank.  *Id.* ¶ 14.

In December 2016, May transferred his interest in CPLII to Logic Growth.  *Id.* ¶ 15.  From February, 2017 through July, 2018, Logic Growth continued to invest money in Global through Day, based on the representations made in Day's marketing materials about Global's legitimacy.  *Id.* ¶ 16.  The 2017-2018 investments were made pursuant to five written Investor Agreements and one oral Investor Agreement.  *Id.* ¶¶ 17, 19.  Each Investor Agreement contained slightly different terms, but each provided that Logic Growth would pay Day (and Day would pay Global) a certain amount of investment principal to be used to purchase, manage, and eventually sell consumer debt portfolios.  *Id.* ¶ 20.  The Investor Agreements provided that Logic Growth would receive certain returns on its investment, in the form of specified "interest payments" made during the term of management, and would be repaid its principal in full when the consumer debt portfolios were

sold. *Id.* Logic Growth alleges that in entering the Investor Agreements, it relied on Day's repeated assurances that Logic Growth would be repaid its full investment principal. *Id.* ¶ 23.

In the days leading up to the February 14, 2017 Investor Agreement, Day orally represented to Logic Growth that the monies it invested would be used to buy consumer debt portfolios. *Id.* ¶ 26. The investor agreement stated, "[u]pon receipt of funds from [Logic Growth], [Day] will immediately transfer all [Logic Growth] funds to Global for the sole purpose of purchasing a portfolio of consumer credit card debt with the sole intent to re-sell the portfolio for a profit within ninety (90) days." ECF 13-1 ¶ 1. Day deposited the $500,000 investment check Logic Growth provided on February 14, 2017 into his personal Wells Fargo bank account. ECF 13 ¶ 29. At the time of the deposit, Day's Wells Fargo account contained a balance of just under $9,000. *Id.* In the coming days and weeks, however, Day wrote a check to the Internal Revenue Service for $167,782.94, made a payment to American Express of $69,723.05, wrote a check to Euro Motorcars Bethesda for $22,000.00, withdrew $50,000 to pay MGM National Harbor, and withdrew $100,000 to pay the Seminole Tribe of Florida. *Id.* ¶ 30. Logic Growth did not learn of Day's personal use of the funds it had provided to him for investment until early 2020, when it learned of the information via discovery in separate civil litigation. *Id.* ¶ 31.

The five written Investor Agreements all contain the following provision: "[Day] and Global agree to defend, indemnify, and hold harmless [Logic Growth] from and against any and all possible liability, demands, claims, allegations, costs, losses, damages, judgment, and expenses." ECF 13-1 through 13-5 ¶ 8. The final Investor Agreement, dated July 24, 2018, contains language providing that Day "personally guarantee[d] the return of [Logic Growth's] principal within three hundred sixty-five (365) days of receipt of said funds by [Day]." ECF 13-5 ¶ 14.

Day did not make the interest payments required in 2017 under the first Investor Agreement, although he acknowledged that they were owing, and Logic Growth agreed to extend the time for payment. ECF 13 ¶ 22. Day made all of the interest payments required under the second Investor Agreement, until the time Merrill's Ponzi scheme collapsed in September, 2018. *Id.* At the time of the collapse, Logic Growth lost all of the principal it had invested under each of the six Investor Agreements, for a total loss of $2,100,000. *Id.* ¶ 25. Day has refused to indemnify Logic Growth for the losses or to pay Logic Growth the $500,000 he personally guaranteed in the July 24, 2018 Investor Agreement. *Id.* ¶¶ 35, 36.

## II.     LEGAL STANDARDS

Day's motion to dismiss alleges that Plaintiff has failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 16. A defendant is permitted to test the legal sufficiency of a complaint by way of a 12(b)(6) motion. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). Such a motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684

(2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy

sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.     ANALYSIS

### A.  Count One: Breach of Contract

#### 1. Indemnification Language

The parties contest whether Day is required to indemnify Logic Growth for its losses of principal under the following contractual provision: "[Day] and Global agree to defend, indemnify, and hold harmless [Logic Growth] from and against any and all possible liability, demands, claims, allegations, costs, losses, damages, judgments, and expenses." ECF 13-1 through 13-5 ⁋ 8.  Day argues that the language constitutes a "garden variety indemnification clause" which should be interpreted to restrict indemnification to third-party claims.  ECF 18 at 2; ECF 16-1 at 8.  Logic Growth counters that the inclusion of words such as "losses" in the list of items to be indemnified indicates that the parties specifically contracted for Logic Growth's compensation for any losses of its invested principal.  ECF 17 at 10.  Each party cites a series of cases, containing differently worded indemnification clauses, that have been interpreted in the manner it urges in this case.  *See* ECF 16 at 8; ECF 17 at 11-12.

Ultimately, this Court concludes that the language of the indemnification clause in the parties' Investor Agreements is ambiguous as to whether "losses" includes Logic Growth's loss of principal.  A "contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person." *Sy-Lene of Wash. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 167 (2003).  To determine whether a contract is ambiguous, a court considers "the character of the contract, its purpose, and the facts and circumstances of the parties at the time" that they enter into the contract. *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388 (1985).

The construction of an ambiguous contract "is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim." *Horlick v. Cap. Women's Care, LLC*, 896 F. Supp. 2d 378, 394 (D. Md. 2011) (applying Maryland contract law) (quoting *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972)); *see also Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97-98 (4th Cir. 1992) (applying Maryland contract law and reversing trial court's grant of a motion to dismiss because the contract in issue was "not free from ambiguity"). Interpretation of an ambiguous contract requires consideration of extrinsic evidence shedding light on the parties' intentions, which is not available to the Court in the motion to dismiss context. *See Cnty. Comm'rs of Charles Cnty. v. St. Charles Assoc. Ltd. P'ship*, 366 Md. 426, 445 (2001).

Here, while there is some logical appeal to Day's argument that an entirely risk-free investment scenario would be exceedingly rare, provisions of the Investor Agreements in fact appear to support that reading. *See, e.g.*, ECF 13-5 ¶ 4 ("Upon termination by either party, Investor shall receive its original investment amount in full plus any interest and or fees due up until the date of termination."). Thus, considering the language of the contract and the parties' relationship at the time the Investor Agreements were entered, extrinsic evidence regarding the parties' intent will be relevant to interpreting the scope of the indemnification clause in question. Accordingly, the motion to dismiss will be denied as to these claims.

**2. Statute of Limitations**

Day's argument that Logic Growth's claims, at least as to the February 14, 2017 Investor Agreement, are barred by the statute of limitations is unavailing. A statute of limitations defense, like other affirmative defenses, can only be adjudicated in the context of a motion to dismiss where "it appears on the face of the complaint that the limitation period has run." *State Auto. Mut. Ins.*

*Co. v. Lennox*, 422 F. Supp. 3d 948, 964 (D. Md. 2019) (quoting *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004)).  No such situation exists here.  Logic Growth asserts no claims arising out of Day's failure to make timely interest payments.  Instead, Logic Growth's claims center on Day's failure to return its full principal.  *See* ECF 13 ¶¶ 45-47 ("Logic Growth lost all of its principal investments made under the Investor Agreements . . . .")  Other than the last, 2018 Investor Agreement, which contained a 365-day personal guarantee, the agreements provided no fixed date for the return of principal.  Thus, there is no plausible argument that a limitations bar is evident from the face of the Amended Complaint.

### 3. Statute of Frauds

Day's motion to dismiss argues that Logic Growth's claims, as to the oral Investor Agreement allegedly entered on May 1, 2017, are barred by the statute of frauds at Section 2-201 of the Commercial Law Article of the Maryland Code.  ECF 16-1 at 15.  However, that statute of frauds, which is premised on Title 2, Section 2-201, of the Uniform Commercial Code, expressly applies only to the "sale of goods."  Md. Code Ann., Com. Law § 2-201 (providing that "a contract for the sale of goods for the price of $500 or more is not enforceable" absent a sufficient writing).  Consumer debt is not a good.  *See Atlas Equity, Inc. v. Chase Bank, USA, N.A.*, 403 F. App'x 190, 192 (9th Cir. 2010) (rejecting contention that Title 2 of the Uniform Commercial Code applied to a sale of consumer debt because the plaintiff had "purchased debts, not goods").  Moreover, the Investor Agreements are service contracts, not contracts for sale of consumer debt or anything else.  *See* ECF 13-1 ¶ 3 ("Global will attempt to buy and sell the portfolio in which [Logic Growth] participates . . . and shall use its best reasonable efforts to produce a profit for [Logic Growth]."); *see also DeGroft v. Lancaster Silo Co., Inc.*, 72 Md. App. 154, 165 (1987) (explaining that "[t]he UCC does not apply to service contracts or to materials used or supplied in connection with the

performance of such contracts."). Thus, the cited statute of frauds does not apply to Logic Growth's claim.[1]

### 4. Guarantee in July 24, 2018 Contract

Unlike the indemnification clause discussed above, the Court finds no ambiguity in the guarantee provision of the July 24, 2018 Investor Agreement, which reads: "By signing this agreement, Gary W. Day, shall personally guarantee the return of the principal per the terms of this agreement within three hundred sixty-five (365) days of receipt of said funds by [Day]." ECF 13-5 ¶ 14. Day argues that the unambiguous language of that clause is modified by another provision of the Investor Agreement. ECF 16-1 at 16. However, the provision he cites does not require Global to return the principal to Day before that amount must be returned to Logic Growth. In fact, the provision upon which Day attempts to rely is poorly written to the point of being incomprehensible. It reads, in relevant part: "[Day] will make its best effort to pay [Logic Growth] One Million Dollars ($1,000,000.00) on or before June 30, 2019 unless either party terminates *and until initial investment amount detailed on page 2 of this document is returned to [Day] by Global*." ECF 13-5 ¶ 4 (emphasis added). As best this Court can glean, the provision indicates that Day's obligation to make his best effort to pay Logic Growth one million dollars on or before June 30, 2019, only lasts until the initial investment amount is returned to Day by Global, if one of the parties has terminated the Investor Agreement. In other words, once Global returns the initial investment amount to Day, if one of the parties has terminated the agreement, Day no longer

---

[1] Perhaps recognizing the deficiencies in his original contention, in his reply memorandum, Day raises the entirely new argument that the statute of frauds set forth in Section 5-901 of the Courts and Judicial Proceedings Article of the Maryland Code bars Logic Growth's claim. ECF 18 at 9-10. This Court will not consider a new argument raised for the first time in a reply. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").

9

has to try to pay Logic Growth one million dollars. The provision does not indicate that the return of Logic Growth's $500,000 principal, which was personally guaranteed by Day to occur within one year, is contingent upon Global's return of the initial investment amount.

The remainder of the paragraph Day cites provides that the interest and fees owed to Logic Growth will be paid "upon receipt of wire from Global," but, again, does not make reimbursement of the principal contingent on any such receipt. Accordingly, because his interpretation is incorrect, Day's motion to dismiss Logic Growth's claim relating to the personal guarantee in the July 24, 2018 Investor Agreement also will be denied.

### B. Count Two: Fraud

#### 1. Viability of Fraud Claim

Day contends that Logic Growth's fraud claim is not viable because Day's statements regarding the intended use of the invested funds were "merely promissory in nature" and cannot constitute fraud, or alternatively that any claim for fraud was merged into the contract. ECF 16-1 at 18. Both arguments are unpersuasive.[2]

Day's broad interpretation of "promissory statements," defined as anything pertaining to future conduct, would vitiate almost any claim of fraud. Instead, Maryland law is clear that the determinative factor is the promisor's present intent at the time the representations are made. *See Gross v. Sussex Inc.*, 322 Md. 247, 258 (1993) (holding that "making a promise as to a matter

---

[2] The economic loss rule, cited as an alternative theory by Day, is patently inapposite. It bars certain purchasers from bringing negligence or strict liability actions but permits purchasers to maintain actions for fraud. *See Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681 (2007) ("Historically, a purchaser suffering only economic loss has ordinarily been unable to bring a tort action for negligence or strict liability; such purchasers have been limited to contract actions for breach of warranty, or, in the case of fraud, a tort action for deceit." (quoting *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 249-50 (1994))). Logic Growth has not asserted a negligence-based claim.

material to the bargain with no intent to fulfill it is actionable fraud"). The Amended Complaint alleges that on the same day Day entered the Investor Agreement promising to "immediately transfer" Logic Growth's funds to Global for investment, he wrote a check from his personal Wells Fargo account to the Internal Revenue Service that would bounce absent the influx of funds from Logic Growth's check. ECF 13 ¶¶ 29-30. Those allegations suffice to plausibly plead fraudulent present intent.

Day's merger argument is no more successful. The existence of a merger clause in a contract does not prevent the use of pre-contractual representations to prove fraudulent conduct. *Greenfield v. Heckenbach*, 144 Md. App. 108, 130-33 (2002). Thus, taking all of the allegations in the Amended Complaint as true, Logic Growth has adequately pled a claim of fraud.

### 2. Statute of Limitations

As explained above, a statute of limitations only operates to allow a claim to be dismissed where the limitations bar is evident from the face of the complaint. Here, the Amended Complaint specifically alleges that Logic Growth learned of Day's personal use of its invested funds in early 2020, as a result of unrelated litigation. ECF 13 ¶ 31. Day's contention that his failure to make timely interest payments in May, 2017 caused Logic Growth's fraud claim to accrue is unpersuasive, particularly because the Amended Complaint expressly alleges that the parties agreed to extend the due date for those payment obligations until the consumer debt portfolio was sold. ECF 13 ¶ 22. Accordingly, facts supporting a limitations defense are not evident from the Amended Complaint.

### IV.   CONCLUSION

For the reasons set forth above, Day's Motion to Dismiss, ECF 16, will be denied. A separate implementing Order follows.

Dated: February 12, 2021 /s/
Stephanie A. Gallagher
United States District Judge